RAYMOND PARENTEAU (FATHER)
On behalf of:
CODY JOSEPH PARENTEAU (A MINOR)
1370 SW David Dr.
Grants Pass, Oregon 97527
Ph.   808.284.7463
Fx.   541.647.1482

**BEFORE THE OFFICE OF ADMINISTRATIVE HEARINGS**

| | |
|---|---|
| **CJP by and through RP (Father)** | ) Case No.: DP 14-104 |
| | ) |
| Petitioners | ) **PETITIONER POSTHEARING BRIEF** |
| | ) |
| vs. | ) |
| | ) |
| **Grants Pass School District 7** | ) |
| | ) |
| Respondents | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

**FINDING OF FACTS INFERRED THROUGH TESTIMONY AND EVIDENCE**

The testimony and evidence from the hearing on June 16 and 17, 2014
prove though a preponderance of the evidence the district failed to provide
ESY services to the Petitioner in the IEP meeting of April 10th, 2014 in error
and direct contradiction to Federal and State law and this failure
constitutes a failure to provide FAPE to Petitioner and denies him
educational opportunity.

1. A primary argument of the district throughout the hearing had to do
   with whether the data collected and compiled by district employees in
   exhibit S21 relating to an obvious serious increase in the behaviors of

Exhibit ___4___

Page _1_ of _7_

1   Petitioner after the Winter break should be used as one means to

2   determine ESY eligibility. The district contended it should not because

3   the data was not aligned with a goal or objective and their ESY

4   guidance documentation stated ESY could only be based on

5   regression/recoupment problems pertaining to goals or objectives in the

6   IEP. The basis for this determination and lack of review of available

7   data was in error. Oregon State law mirrors the Federal Regulations

8   when it states in part:

9       OAR 581-015-2065

10      Extended School Year Services

11      (1) School districts must ensure that extended school year

12      services are available as necessary to provide a free appropriate

13      public education to a child with a disability.

14      (2) Extended school year services must be provided only if the

15      child's IEP team determines, on an individual basis, that the

16      services are necessary for the provision of free appropriate

17      public education to the child.

18      (3) A school district may not:

19      (a) Limit extended school year services to particular categories

20      of disability; or

21      (b) Unilaterally limit the type, amount, or duration of those

22      services.

23      (4) The purpose of extended school year services is the

24      maintenance of the child's learning skills or behavior, not the

25      teaching of new skills or behaviors.

Exhibit ___4___

Page _8_ of _7_

PETITIONER POSTHEARING BRIEF - 2

1

2    (5) School districts must develop criteria for determining the

3    need for extended school year services. Criteria must include

4    regression and recoupment time based on documented evidence or,

5    if no documented evidence, on predictions according to the

6    professional judgment of the team.

7  Although the State and Federal regulations allow the district to

8  develop the criteria for determining the need for ESY, they do not

9  provide for limiting the inquiry to regression on IEP goals or

10 objectives only. This is clearly stated in par. (1) of the State

11 regulation when it references the services are required when necessary

12 to provide FAPE. The definition of FAPE is not limited to just goals

13 and objectives as par. (4) clearly includes the maintenance of

14 behaviors as a purpose for ESY in direct contradiction to the

15 district's ESY guidance. Additionally, student's IEP contains many

16 references including the need for a functional behavior assessment and

17 behavior support plan which support the inference maintenance of

18 behaviors is critical to his academic success and a FAPE.

19 2. Both the SPED Director Mr. Kolb and teacher Mrs. Jewell confirm in

20 testimony Mrs. Jewell developed, analyzed and provided the sole data

21 set, exhibit D10, used to make the ESY determination in the IEP meeting

22 to determine ESY. Tr. Vol. 1, 25:12-16, Tr. Vol. 1, 27:10-16, Tr. Vol.

23 1, 49:7-14 and Tr. Vol. 1, 105:1-23.

24

25

Exhibit ___4___
Page _3_ of _4_

3. The teacher Mrs. Jewell agreed in testimony student's aberrant or negative behaviors can impede and impact every goal and objective. Tr. Vol. 1, 147:17-20

4. The teacher additionally states she was responsible for confirming and verifying the fidelity of the data and the methods in which it was collected. Tr. Vol. 1, 149:22-25 She then goes on to state to Judge House she made sure the discreet trials and collected data were being presented consistently and collected correctly. Tr. Vol. 1, 154:1-5 She then at Tr. Vol. 1, 14:13-25 alludes to her personal observation of the fidelity of the methods and data for the first two data points after the Winter break. Surprisingly, she later recants those statements at Tr. Vol. 1, 168:6-12 and further states at Tr. Vol. 1, 201:9-15 she could not use the aforementioned data for ESY determination nor would she recommend its use for ESY determination by the IEP team. It appears as the hearing progresses the teacher lost confidence in what she was stating and went from being completely confident in the data to suggesting it should not be used at all.

   In order for the District to have provided a FAPE, it must have complied with the procedures set forth in the IDEA, and its IEP must have been reasonably calculated to enable the child to receive educational benefit. *Board of Educ. v. Rowley*, 458 U.S. 176, 206-07, 102 S. Ct. 3034, 3051, 73 L.Ed.2d 690 (1982).

   The Supreme Court further identified in *WINKELMAN v. PARMA CITY SCHOOL DISTRICT* (2007) [That] IDEA requires school districts to develop an IEP for

Exhibit _____

Page __4__ of __7__

1  each child with a disability, see §§1412(a)(4), 1414(d), with parents playing

2  "a significant role" in this process, *Schaffer v. Weast*, 546 U. S. 49, 53

3  (2005). And the Court additionally provides us with a definition of FAPE:

4       The Act defines a "free appropriate public education" pursuant to an

5       IEP to be an educational instruction "specially designed . . . to meet

6       the unique needs of a child with a disability," §1401(29), coupled with

7       any additional " 'related services' " that are "required to assist a

8       child with a disability to benefit from [that instruction],"

9       §1401(26)(A). See also §1401(9). (Sec. A, pg. 3, par. 3 )

10

11      In the instant case the child has a unique need, as identified by the

12  regression of behavior skills, math skills and reading skills which were not

13  recouped within the district's own guidelines after the Winter break. No, I

14  do not agree with the district methodology, manner or lack of using all

15  existing data to make a determination for ESY eligibility, but this case was

16  not about that. This case was about the data was compiled, parsed and

17  analyzed wrong before the IEP meeting to make the determination was even

18  held; and during the ESY determination meeting, if the data analysis was

19  incorrect the team could not have made a correct decision. I showed through

20  testimony, using the district's own guidelines for analyzing the data, Cody

21  regressed and did not recoup the skills within the allotted time frame on

22  many very important academic skills, but most importantly behavior

23  management, compliance and instructional control. Without those important

24  behavior skills intact, based on the teacher's own testimony, progress

25  towards all goals and objectives will be impeded and impacted. Even the

Exhibit  4

PETITIONER POSTHEARING BRIEF - Page 5  Page  5  of  7

1  Autism expert who worked with Cody last summer stated she had difficulty with

2  Cody's behaviors when trying to engage him in academic IEP goals and

3  objectives. Tr. Vol. 2, 147:7-9, 22-25

4      Cody cannot take a test before a break and then take the same test when

5  he gets back from break, such as a times table test to determine if he

6  regressed over an extended break period. The only thing we as parents and

7  educators have to rely on to make a determination of regression and/or

8  recoupment time is the data which is collected pre and post break. The data

9  is just that, data. It is objective information which is blind to whether he

10  is in a good mood or bad mood, has a different instructor for the day or

11  wants to go home early for some reason. It simply tells us what he is capable

12  of at the moment the trial is given to him. If he did not have Autism would

13  we excuse a failed test because he was not in the mood to take a test that

14  day? No, the test would be a direct reflection of his ability when the test

15  was administered. I am keenly aware that I as a parent have no say in

16  teaching methodology or even how data is collected, but when I have access to

17  the raw data collected, I can hold the district culpable for the results of

18  its efforts with said data. That is what this hearing was about. Cody clearly

19  showed regression with a lack of recoupment after the Winter break in enough

20  areas related to a FAPE and educational opportunity to warrant ESY and this

21  demonstrated regression with lack of recoupment was shown using district data

22  and district guidelines. Whether the district is confident in the fidelity of

23  the task presentations and collection methods for the data almost does not

24  matter since their own staff swayed both ways from 100% confident to no

25  confidence. It is and was the only data available, besides the daily behavior

1    data they were determined not to address or use, for ESY determination and

2    they created it.

3                        **CONCLUSION AND RELIEF SOUGHT**

4         The testimony and evidence in this case clearly point to the fact the

5    Respondent district erred in the decision to not provide ESY services for the

6    Petitioner. Regression with lack of recoupment was clearly demonstrated

7    through the data. Without the benefit of ESY over this summer, it is clear

8    the potential for even greater regression with a longer recoupment time is

9    likely.

10        Based on the presumptive finding from this hearing that the Petitioner

11   was denied a FAPE and educational opportunity we request the following

12   relief:

13        Compensatory education to be delivered in the form of ESY during the

14   summer of 2014 to begin immediately and continue until ten days prior to the

15   start of the new regular school year. The details of requested ESY

16   compensatory education are outlined and enumerated in the Hawaii IEP which

17   was in effect prior to the current IEP. The Hawaii IEP is Petitioner exhibit

18   S11 and the outline and enumerated details can be found on page 16 of 16.

19

20                        Respectfully submitted this 24th day of June, 2014

21

22                        _____
                                    RAYMOND PARENTEAU
23

24

25

PETITIONER POSTHEARING BRIEF - 7

Exhibit ____4____

Page __7__ of __7__